Russell S. Thompson, IV (Cal. Bar No. 325944)
Thompson Consumer Law Group
7080 Hollywood Blvd., Suite 1100
Los Angeles, CA 90028
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com
Counsel for Plaintiffs and the proposed classes

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Terri Stivers and Craig Olmscheid, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TrueAccord Corp., <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT AND TRIAL BY JURY DEMAND** |

### NATURE OF ACTION

1.      Terri Stivers ("Ms. Stivers") and Craig Olmscheid ("Mr. Olmscheid") (collectively, "Plaintiffs") bring this class action against TrueAccord Corp. ("Defendant") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civ. Code § 1788, *et seq*.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction over the Rosenthal Act claims pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) because Defendant has its principal place of business in this district.

## INTRADISTRICT ASSIGNMENT

5.     The San Francisco Division is the proper division for assignment of this case as Defendant has its principal place of business in San Francisco County, and upon information and belief, disseminated the illegal debt collection communications from San Francisco County.

## THE FAIR DEBT COLLECTION PRACTICES ACT

6.     Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

7.     To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

8.     Strict liability enhances "the remedial nature of the statute," and courts are "to interpret it liberally" to protect consumers. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006).

9.     "In addition, by making available to prevailing consumers both statutory damages and attorneys' fees, Congress 'clearly intended that private enforcement actions would be the primary enforcement tool of the Act.'" *Id.* (quoting *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982)).

10.     Violations of the FDCPA are assessed under the least sophisticated consumer standard, which is "'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naïve,' particularly when those individuals are targeted by debt collectors." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (quoting *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000)).

## THE ROSENTHAL ACT

11.     "California has adopted a state version of the FDCPA, called the Rosenthal Act." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012).

12.     Like the FDCPA, the purpose of the Rosenthal Act is to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title." Cal. Civ. Code § 1788.1(b).

13.     "The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations." *Riggs*, 681 F.3d at 1100.

14.     "[A] plaintiff who recovers under the FDCPA is entitled to damages under the corresponding section of the [Rosenthal Act]." *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1077 (E.D. Cal. 2007).

## PARTIES

15.     Ms. Stivers is a natural person who at all relevant times resided in Fresno County, California.

16.     Ms. Stivers is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

17.     Ms. Stivers's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a personal credit card with Synchrony Bank (the "Stivers Debt").

18.     Ms. Stivers is a "consumer" as defined by 15 U.S.C. § 1692a(3).

19.     Ms. Stivers is a "person" as defined by Cal. Civ. Code § 1788.2(g).

20.     Mr. Olmscheid is a natural person who at all relevant times resided in Montgomery County, Texas.

21.      Mr. Olmscheid is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

22.     Mr. Olmscheid's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a personal credit card with WebBank (the "Olmscheid Debt").

23.     Mr. Olmscheid is a "consumer" as defined by 15 U.S.C. § 1692a(3).

24.     Mr. Olmscheid is a "person" as defined by Cal. Civ. Code § 1788.2(g).

25.     Defendant is a Delaware corporation with its principal office in San Francisco County, California.

26.     Defendant holds itself out as "a debt collection agency."[1]

27.     Defendant is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiffs, as defined by 15 U.S.C. § 1692a(5).

28.     Upon information and belief, at the time Defendant attempted to collect the Stivers Debt and the Olmscheid Debt from Ms. Stivers and Mr. Olmscheid, respectively, the debts were in default, or Defendant treated the debts as if they were in default from the time that Defendant acquired them for collection.

---

[1]     *See* https://www.trueaccord.com/ (last accessed March 3, 2021).

29.     Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

30.     Defendant held itself out to Plaintiffs as a debt collector.

31.     Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) and by Cal. Civ. Code § 1788.2(c).

## FACTUAL ALLEGATIONS

### Allegations Particular to Ms. Stivers

32.     On or about June 25, 2020—in the midst of the Covid-19 pandemic—Defendant sent Ms. Stivers a written communication in connection with the collection of the Stivers Debt.

33.     A true and correct copy of Defendant's June 25, 2020 written communication is attached as Exhibit A.

34.     Defendant's June 25, 2020 written communication begins by encouraging Ms. Stivers to "[p]lease talk to us." Ex. A.

35.     Next, Defendant's June 25, 2020 threatens Ms. Stivers:

At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id*. (emphasis added).

36.     Thereafter, Defendant's June 25, 2020 written communication advises Ms. Stivers:

Get in touch so you can resolve this debt.
Our records show that you haven't been in touch with us.  We're here to work with you.

You should respond especially if you have questions about this outstanding balance with LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account).

Don't just disregard this email. Talk to us.  It's the best way to resolve this debt.

*Id.*

37.     On or about June 29, 2020, Defendant sent Ms. Stivers another written communication in connection with the collection of the Stivers Debt.

38.     A true and correct copy of Defendant's June 29, 2020 written communication is attached as Exhibit B.

39.     Defendant's June 29, 2020 written communication begins by advising Ms. Stivers "[i]t's not too late." Ex. B.

40.     Next, Defendant's June 29, 2020 communication again threatens Ms. Stivers:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id.* (emphasis added).

41.     Thereafter, Defendant's June 29, 2020 written communication advises Ms. Stivers:

> Terri, your outstanding balance to LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account) needs some attention.
> Don't worry though, it's not too late.  We have agents standing by ready to help, so please get in touch so we can get this resolved.

*Id.*

42.     On or about July 2, 2020, Defendant sent Ms. Stivers another written communication in connection with the collection of the Stivers Debt.

43.     A true and correct copy of Defendant's July 2, 2020 written communication is attached as Exhibit C.

44.     Defendant's July 2, 2020 written communication begins by advising Ms. Stivers "[y]ou can do this." Ex. C.

45.     Next, Defendant's July 2, 2020 communication again threatens Ms. Stivers:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id.* (emphasis added).

46.     Thereafter, Defendant's July 2, 2020 written communication advises Ms. Stivers:

> You owe money to LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account).
> Your past due balance is $1,258.75.
> If you don't believe you are liable for this debt, reach out now. If this is your obligation, pay off your balance easily or apply for a payment plan.

*Id.*

47.     On or about July 9, 2020, Defendant sent Ms. Stivers another written communication in connection with the collection of the Stivers Debt.

48.     A true and correct copy of Defendant's July 9, 2020 written communication is attached as Exhibit D.

49.     Defendant's July 9, 2020 written communication begins by advising Ms. Stivers "[t]his is your reminder." Ex. D.

50.     Next, Defendant's July 9, 2020 communication again threatens Ms. Stivers:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id.* (emphasis added).

51.     Thereafter, Defendant's July 9, 2020 written communication advises Ms. Stivers:

Your balance with LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account) is still outstanding.
It's been a stressful few months and it's hard to remember every little obligation.
This balance is still outstanding.

*Id.*

52.     On or about July 13, 2020, Defendant sent Ms. Stivers another written communication in connection with the collection of the Stivers Debt.

53.     A true and correct copy of Defendant's July 13, 2020 written communication is attached as Exhibit E.

54.     Defendant's July 13, 2020 communication again threatens Ms. Stivers:

At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together.
Learn More.

Ex. E (emphasis added).

55.     Thereafter, Defendant's July 13, 2020 written communication advises Ms. Stivers:

You've had many opportunities to resolve your outstanding balance with LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account).
Dear Terri Stivers, have you been waiting to pay because you didn't have any spare cash?

*Id.*

56.     The July 13, 2020 written communication continues:

We're concerned because we've been trying to reach you for a few months now, but there is no payment arrangement set up for this account. Even if money is too tight, we have options for you!

*Id.*

57.     On or about July 16, 2020, Defendant sent Ms. Stivers another written communication in connection with the collection of the Stivers Debt.

58.     A true and correct copy of Defendant's July 16, 2020 written communication is attached as Exhibit F.

59.     Defendant's July 16, 2020 written communication begins by advising Ms. Stivers "[w]e want to help you." Ex. F.

60.     Defendant's July 16, 2020 communication again threatens Ms. Stivers:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id.* (emphasis added).

61.     Thereafter, Defendant's July 16, 2020 written communication advises Ms. Stivers:

> We've been trying to get your attention.
> Terri, you have an outstanding balance with LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account).
>
> It's not too late to pay this off. Start the seamless payment process by visiting our website today.

*Id.*

62.     Defendant sent additional written communications to Ms. Stivers on July 22, 2020, July 27, 2020, August 1, 2020, August 4, 2020, August 7, 2020, August 10, 2020, August 13, 2020, August 16, 2020, August 22, 2020, August 26, 2020, August 30, 2020, September 2, 2020, September 4, 2020, September 8, 2020, September 11, 2020, September 15, 2020, September 21, 2020, September 25, 2020, September 29, 2020, October 3, 2020, October 6, 2020, October 9, 2020, October 13, 2020, October 17, 2020, October 20, 2020, October 22,

2020, October 25, 2020, October 27, 2020, October 30, 2020, November 1, 2020, and November 6, 2020.

63.     Each of these written communications threatens Ms. Stivers that "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit."

64.     Upon information and belief, as of November 6, 2020, Defendant had not returned the Stivers Debt to LVNV.

65.     Upon information and belief, LVNV has not filed a lawsuit against Ms. Stivers regarding the Stivers Debt.

**Allegations Particular to Mr. Olmscheid**

66.     On or about June 29, 2020—in the midst of the Covid-19 pandemic—Defendant sent Mr. Olmscheid a written communication in connection with the collection of the Olmscheid Debt.

67.     A true and correct copy of Defendant's June 29, 2020 written communication is attached as Exhibit G.

68.     Defendant's June 29, 2020 written communication begins by advising Mr. Olmscheid that "this is an important notification regarding your LVNV Funding LLC (current creditor of your original WebBank (issuer of your Fingerhut card) account) account." Ex. G.

69.     Next, Defendant's June 29, 2020 communication threatens Mr. Olmscheid:

At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id.* (emphasis added).

70.    Thereafter, Defendant's June 29, 2020 written communication advises Mr. Olmscheid:

Being up to date on your finances helps give you peace of mind.

Craig Olmscheid, we are writing to tell you about an important matter that should be resolved. It's possible that you weren't aware of your outstanding balance of $2,159.85, originally owed to WebBank (issuer of your Fingerhut card).

Learn about your options to resolve this.

*Id.*

71.    On or about July 4, 2020, Defendant sent Mr. Olmscheid another written communication in connection with the collection of the Olmscheid Debt.

72.    A true and correct copy of Defendant's July 4, 2020 written communication is attached as Exhibit H.

73.    Defendant's July 4, 2020 written communication begins with the heading "[i]mportant notice regarding your account." Ex. H.

74.    Next, Defendant's July 4, 2020 communication threatens Mr. Olmscheid:

At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id.* (emphasis added).

75.    Thereafter, Defendant's July 4, 2020 written communication advises Mr. Olmscheid:

Craig, please set up a payment arrangement.

LVNV Funding LLC (current creditor of your original WebBank (issuer of your Fingerhut card) account) would like to prevent legal review on your past due account, so they gave us the opportunity to assist you in reaching a resolution.

While your account is still with us, we'd like to work with you to resolve your past due balance. Otherwise, LVNV Funding LLC (current creditor of your original WebBank (issuer of your Fingerhut card) account) may review your account for placement with an attorney for legal review as their next step.

You can prevent this by setting up a payment arrangement.

*Id.*

76.   On or about July 15, 2020, Defendant sent Mr. Olmscheid another written communication in connection with the collection of the Olmscheid Debt.

77.   A true and correct copy of Defendant's July 15, 2020 written communication is attached as Exhibit I.

78.   Defendant's July 15, 2020 written communication begins with the heading "[a]ccount notification." Ex. I.

79.   Next, Defendant's July 15, 2020 communication threatens Mr. Olmscheid:

At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id.* (emphasis added).

80.   Thereafter, Defendant's July 15, 2020 written communication advises Mr. Olmscheid:

Craig, please set up a payment arrangement.
LVNV Funding LLC (current creditor of your original WebBank (issuer of your Fingerhut card) account) wants to avoid reviewing your account for potential placement with a law firm, so they've asked us to work with you.

Please review your account summary and take this opportunity to pay your balance. Let us know if you have any questions.

*Id.*

81.     On or about July 21, 2020, Defendant sent Mr. Olmscheid another written communication in connection with the collection of the Olmscheid Debt.

82.     A true and correct copy of Defendant's July 21, 2020 written communication is attached as Exhibit J.

83.     Defendant's July 21, 2020 written communication begins with the heading "regarding your account." Ex. J.

84.     Next, Defendant's July 21, 2020 communication threatens Mr. Olmscheid:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id.* (emphasis added).

85.     Thereafter, Defendant's July 21, 2020 written communication advises Mr. Olmscheid:

> We're here to help make the collections process as smooth as possible
>
> Hello Craig,
>
> We are TrueAccord, a third party debt collection agency that is working on behalf of LVNV Funding LLC to collect on a balance of $2,159.85.
>
> Our approach is to make the debt collection experience better for the customer by offering self serve options online.
>
> Take a look at your flexible options, and let us know if you need any assistance.
>
> You can review the details of this balance below.

*Id.*

86.     On or about July 28, 2020, Defendant sent Mr. Olmscheid another written communication in connection with the collection of the Olmscheid Debt.

87. A true and correct copy of Defendant's July 28, 2020 written communication is attached as Exhibit K.

88. Defendant's July 28, 2020 written communication begins with the heading "[s]tay informed." Ex. K.

89. Next, Defendant's July 28, 2020 communication threatens Mr. Olmscheid:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id.* (emphasis added).

90. Thereafter, Defendant's July 28, 2020 written communication advises Mr. Olmscheid:

> Your support team at TrueAccord wants to help you get your balance resolved
> Craig, we'd like to work with you regarding your outstanding balance of $2,159.85 with LVNV Funding LLC because they've given us a short period of time to help you resolve your balance.
>
> If a payment arrangement is not set up while your account is with us, LVNV Funding LLC may review your account for potential placement with a law firm for legal review.

*Id.*

91. Defendant sent written communications to Mr. Olmscheid on August 2, 2020, August 8, 2020, August 13, 2020, August 19, 2020, August 24, 2020, August 31, 2020, September 20, 2020, September 25, 2020, October 1, 2020, October 6, 2020, October 16, 2020, October 21, 2020, October 27, 2020, November 2, 2020, November 7, 2020, November 11, 2020, November 14, 2020, November 17, 2020, November 21, 2020, November 24, 2020, November 28, 2020, December 1, 2020, December 5, 2020, December 9, 2020, December 12, 2020 and December 16, 2020.

92. Each of these written communications threatens Mr. Olmscheid that "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit."

93. Upon information and belief, Defendant had not returned the Olmscheid Debt to LVNV as of December 16, 2020.

94. Upon information and belief, LVNV had not filed a lawsuit against Mr. Olmscheid regarding the Olmscheid Debt as of December 16, 2020.

95. On or about December 25, 2020—Christmas Day—Defendant sent Mr. Olmscheid a written communication in connection with the collection of the Olmscheid Debt.

96. A true and correct copy of Defendant's December 25, 2020 written communication is attached as Exhibit L.

97. Defendant's December 25, 2020 written communication begins with the heading "[d]on't let that happen." Ex. L.

98. Next, Defendant's December 25, 2020 communication threatens Mr. Olmscheid:

At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together. Learn More.

*Id.* (emphasis added).

99. Thereafter, Defendant's December 25, 2020 written communication advises Mr. Olmscheid:

There are offers available for your $2,159.85 balance.
**Your account will be taken back by LVNV Funding LLC (current creditor of your original WebBank (issuer of your Fingerhut card) account) for placement with another agency.**

Until then, our payment plans are available to you. You can still go on our website and make a payment.

*Id*. (emphasis added).

## Class Action Allegations

100.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the following two classes:

> *FDCPA Class*: All persons (a) with a California or Texas address, (b) to whom TrueAccord sent at least 15 debt collection communications not known to be returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that included the language "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit."

> *Rosenthal Class*: All persons (a) with a California address, (b) to whom TrueAccord sent at least 15 debt collection communications not known to be returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that included the language "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit."

101.    Excluded from the classes are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had controlling interests.

102.    The classes satisfy Rule 23(a)(1) because, upon information and belief, they are so numerous that joinder of all members is impracticable.

103.    The exact number of class members is unknown to Plaintiffs at this time and can only be determined through appropriate discovery.

104.    The classes are ascertainable because they are defined by reference to objective criteria.

105.    In addition, upon information and belief, the names and addresses of all members of the proposed classes can be identified in business records maintained by Defendant.

106.    The classes satisfy Rules 23(a)(2) and (3) because Plaintiffs' claims are typical of the claims of the members of the classes.

107.    To be sure, Plaintiffs' claims and those of the members of the classes originate from the same standardized debt collection communications utilized by Defendant, and Plaintiffs possess the same interests and have suffered the same injuries as each member of the classes they seek to represent.

108.    Plaintiffs satisfy Rule 23(a)(4) because they will fairly and adequately protect the interests of the members of the classes and have retained counsel experienced and competent in class action litigation.

109.    Plaintiffs have no interests that are contrary to or in conflict with the members of the classes that they seek to represent.

110.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since, upon information and belief, joinder of all members is impracticable.

111.    Furthermore, as the damages suffered by individual members of the classes may be relatively small, the expense and burden of individual litigation could make it impracticable for the members of the classes to individually redress the wrongs done to them.

112.    There should be no unusual difficulty in the management of this action as a class action.

113.    Issues of law and fact common to the members of the classes predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the classes.

114.    Among the issues of law and fact common to the classes:

a.  Defendant's violations of the FDCPA and the Rosenthal Act as alleged herein;

b.  whether Defendant is a debt collector as defined by the FDCPA and Cal. Civ. Code § 1788.2(c);

c.  the availability of statutory penalties; and

d.  the availability of attorneys' fees and costs.

**Count I: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e**
**(as to Plaintiffs and the FDCPA Class)**

115.    Plaintiffs repeat and re-allege each factual allegation contained in paragraphs 1 - 114.

116.    The FDCPA at 15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

117.    "Section 1692e was enacted against a backdrop of cases in which courts held that communications designed to create a false sense of urgency were deceptive." *Peter v. GC Servs. L.P.*, 310 F.3d 344, 348 (5th Cir. 2002).

118.    Not surprisingly, then, the FDCPA may be violated if "a debt collector 'creates a false sense of urgency.'" *Uyeda v. J.A. Cambece Law Office, P.C.*, No. 04-04312, 2005 WL 1168421, at *3 (N.D. Cal. 2005) (quoting *Morgan v. Credit Adjustment Bd.*, 999 F. Supp. 803, 808 (E.D. Va. 1998)); *see also Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act*, 53 FR 50097-02, 1988 WL 269068, at 8 at 50106 (Dec. 13, 1988) ("A debt collector may not communicate by a format or envelope that misrepresents the nature, purpose, or urgency of the message. It is a violation to send any communication that conveys to the consumer a false sense of urgency.").

119.    As early as June 2020, Defendant began separately threatening Ms. Stivers and Mr. Olmscheid that "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit." *See, e.g.*, Exs. A, G.

120.     Neither Ms. Stivers nor Mr. Olmscheid contacted Defendant about her or his respective debt in response to the June 2020 communications.

121.     No matter, for at least five months, Defendants continued to inundate Ms. Stivers and Mr. Olmscheid with debt collection communications threatening that if they failed to contact Defendant about their respective debts, the debts would be returned to LVNV, who may then forward them to an attorney to file suit.

122.     Upon information and belief, Defendant did not return the debts to LVNV during this time, nor did LVNV file a lawsuit against Ms. Stivers or Mr. Olmscheid.

123.     As a result, Defendant created a false sense of urgency by repeatedly pressuring Ms. Stivers and Mr. Olmscheid to contact Defendant about their respective debts using threats that appeared time-sensitive in nature, but with which Defendant did not follow through.

124.     Moreover, Defendant's threats, though appearing to be time-sensitive in nature to the least sophisticated consumer, were not actually time-sensitive in nature because Defendant had no intention to immediately pursue the threatened action as evidenced by Defendant's failure to take the threatened action in a timely manner.

125.     Thus, Defendant violated 15 U.S.C. § 1692e by using a false, deceptive, or misleading representation or means in connection with the collection of an alleged debt.

126.     The harm suffered by Plaintiffs is particularized in that the violative debt collection conduct was directed at them personally and regarded their personal alleged debts.

127.     Creating a false sense of urgency "implicate[s] core Congressional concerns underlying the FDCPA." *Peter*, 310 F.3d at 352.

128.     And Plaintiffs suffered harm here by way of the impairment of an FDCPA-created substantive right to truthful, non-deceptive information in debt collection communications. *See*

*Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1116 (9th Cir. 2014) ("…. the violation of his right not to be the target of misleading debt collection communications…constitutes a cognizable injury under Article III.").

129.    Due to other financial obligations that take priority, Plaintiffs were unable to make any payments on their respective debts.

130.    Because Plaintiffs were worried about the legal consequences of continuing to ignore Defendant's communications which threatened a lawsuit if they did not respond, they ultimately contacted counsel for legal advice concerning the threats, including the timing of when Defendant would be filing suit.

131.    Furthermore, Defendant's debt collection conduct also created a material risk of harm to that concrete interest Congress was trying to protect in enacting the FDCPA.

132.    That is, a consumer who is faced with repeated threats of an imminent lawsuit for months on end is likely to suffer stress and anxiety.

133.    And here, Plaintiffs suffered stress and anxiety over the repeated threats—often several times a week for months on end—that if they did not pay their respective debts, a lawsuit might soon be filed against each of them.

**Count II: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(10)
(as to Plaintiffs and the FDCPA Class)**

134.    Plaintiffs repeat and re-allege each factual allegation contained in paragraphs 1 - 114.

135.    The FDCPA at 15 U.S.C. § 1692e(10) prohibits a debt collector from "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

136.   As early as June 2020, Defendant began separately threatening Ms. Stivers and Mr. Olmscheid that "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit." *See, e.g.*, Exs. A, G.

137.   Neither Ms. Stivers nor Mr. Olmscheid contacted Defendant about her or his respective debt in response to the June 2020 communications.

138.   No matter, for at least five months, Defendants continued to inundate Ms. Stivers and Mr. Olmscheid with debt collection communications threatening that if they failed to contact Defendant about their respective debts, the debts would be returned to LVNV, who may then forward them to an attorney to file suit.

139.   Upon information and belief, Defendant did not return the debts to LVNV during this time, nor did LVNV file a lawsuit against Ms. Stivers or Mr. Olmscheid.

140.   As a result, Defendant created a false sense of urgency by repeatedly pressuring Ms. Stivers and Mr. Olmscheid to contact Defendant about their respective debts using threats that appeared time-sensitive in nature, but with which Defendant did not follow through.

141.   Moreover, Defendant's threats, though appearing to be time-sensitive in nature to the least sophisticated consumer, were not actually time-sensitive in nature because Defendant had no intention to immediately pursue the threatened action as evidenced by Defendant's failure to take the threatened action in a timely manner.

142.   Thus, Defendant violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to collect or attempt to collect any debt.

143.   The harm suffered by Plaintiffs is particularized in that the violative debt collection conduct was directed at them personally and regarded their personal alleged debts.

144.    Creating a false sense of urgency "implicate[s] core Congressional concerns underlying the FDCPA." *Peter*, 310 F.3d at 352.

145.    And Plaintiffs suffered harm here by way of the impairment of an FDCPA-created substantive right to truthful, non-deceptive information in debt collection communications. *See Tourgeman*, 755 F.3d at 1116 ("…. the violation of his right not to be the target of misleading debt collection communications…constitutes a cognizable injury under Article III.").

146.    Due to other financial obligations that take priority, Plaintiffs were unable to make any payments on their respective debts.

147.    Because Plaintiffs were worried about the legal consequences of continuing to ignore Defendant's communications which threatened a lawsuit if they did not respond, they ultimately contacted counsel for legal advice concerning the threats, including the timing of when Defendant would be filing suit.

148.    Furthermore, Defendant's debt collection conduct also created a material risk of harm to that concrete interest Congress was trying to protect in enacting the FDCPA.

149.    That is, a consumer who is faced with repeated threats of an imminent lawsuit for months on end is likely to suffer stress and anxiety.

150.    And here, Plaintiffs suffered stress and anxiety over the repeated threats—often several times a week for months on end—that if they did not pay their respective debts, a lawsuit might soon be filed against each of them.

### Count III: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f
### (as to Plaintiffs and the FDCPA Class)

151.    Plaintiffs repeat and re-allege each factual allegation contained in paragraphs 1 - 114.

152.    The FDCPA prohibits the use of unfair or unconscionable means to collect debts. *See* 15 U.S.C. § 1692f.

153.    In addition to the non-exhaustive list of conduct that violates the FDCPA, § 1692f "allows a court to sanction improper conduct the FDCPA fails to address specifically." *Turner v. Prof'l Recovery Servs., Inc.*, 956 F. Supp. 2d 573, 580 (D.N.J. 2013) (quoting *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996)).

154.    As early as June 2020, Defendant began separately threatening Ms. Stivers and Mr. Olmscheid that "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit." *See, e.g.*, Exs. A, G.

155.    Neither Ms. Stivers nor Mr. Olmscheidcontacted Defendant about her or his respective debt in response to the June 2020 communications.

156.    No matter, for at least five months, Defendants continued to inundate Ms. Stivers and Mr. Olmscheidwith debt collection communications threatening that if they failed to contact Defendant about their respective debts, the debts would be returned to LVNV, who may then forward them to an attorney to file suit.

157.    Upon information and belief, Defendant did not return the debts to LVNV during this time, nor did LVNV file a lawsuit against Ms. Stivers or Mr. Olmscheid.

158.    As a result, Defendant created a false sense of urgency by repeatedly pressuring Ms. Stivers and Mr. Olmscheid to contact Defendant about their respective debts using threats that appeared time-sensitive in nature, but with which Defendant did not follow through.

159.    Moreover, Defendant's threats, though appearing to be time-sensitive in nature to the least sophisticated consumer, were not actually time-sensitive in nature because Defendant

had no intention to immediately pursue the threatened action as evidenced by Defendant's failure to take the threatened action in a timely manner.

160.    Thus, Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means against Plaintiffs in connection with an attempt to collect an alleged debt.

161.    The harm suffered by Plaintiffs is particularized in that the violative debt collection conduct was directed at them personally and regarded their personal alleged debts.

162.    Creating a false sense of urgency "implicate[s] core Congressional concerns underlying the FDCPA." *Peter*, 310 F.3d at 352.

163.    And Plaintiffs suffered harm here by way of the impairment of an FDCPA-created substantive right to truthful, non-deceptive information in debt collection communications. *See Tourgeman*, 755 F.3d at 1116 ("…. the violation of his right not to be the target of misleading debt collection communications…constitutes a cognizable injury under Article III.").

164.    Due to other financial obligations that take priority, Plaintiffs were unable to make any payments on their respective debts.

165.    Because Plaintiffs were worried about the legal consequences of continuing to ignore Defendant's communications which threatened a lawsuit if they did not respond, they ultimately contacted counsel for legal advice concerning the threats, including the timing of when Defendant would be filing suit.

166.    Furthermore, Defendant's debt collection conduct also created a material risk of harm to that concrete interest Congress was trying to protect in enacting the FDCPA.

167.    That is, a consumer who is faced with repeated threats of an imminent lawsuit for months on end is likely to suffer stress and anxiety.

168.    And here, Plaintiffs suffered stress and anxiety over the repeated threats—often several times a week for months on end—that if they did not pay their respective debts, a lawsuit might soon be filed against each of them.

### Count IV: Violation of Cal. Civ. Code § 1788.17
### (as to Ms. Stivers and the Rosenthal Class)

169.    Plaintiffs repeat and re-allege each factual allegation contained in paragraphs 1 - 114.

170.    A debt collector violates Cal. Civ. Code § 1788.17 by failing to comply with §§ 1692b-j of the FDCPA. *See, e.g.*, *Langdon v. Credit Mgmt., LP*, No. C 09–3286 VRW, 2010 WL 3341860, at *3 (N.D. Cal. Feb. 24, 2010) (noting that section 1788.17 creates state law liability for violations of the FDCPA).

171.    As early as June 2020, Defendant began separately threatening Ms. Stivers and Mr. Olmscheid that "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit." *See, e.g.,* Exs. A, G.

172.    Ms. Stivers did not contact Defendant about her debt in response to the June 2020 communications.

173.    No matter, for at least five months, Defendants continued to inundate Ms. Stivers with debt collection communications threatening that if she failed to contact Defendant about her debt, the debt would be returned to LVNV, who may then forward it to an attorney to file suit.

174.    Upon information and belief, Defendant did not return the Stivers Debt to LVNV during this time, nor did LVNV file a lawsuit against Ms. Stivers..

175.    As a result, Defendant created a false sense of urgency by repeatedly pressuring Ms. Stivers to contact Defendant about her debt using threats that appeared time-sensitive in nature, but with which Defendant did not follow through.

176.     Moreover, Defendant's threats, though appearing to be time-sensitive in nature to the least sophisticated consumer, were not actually time-sensitive in nature because Defendant had no intention to immediately pursue the threatened action as evidenced by Defendant's failure to take the threatened action in a timely manner.

177.     Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of any debt.

178.     Defendant violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to collect or attempt to collect any debt.

179.     Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means against Plaintiff in connection with the collection of any debt.

180.     Therefore, by violating 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(10) and 15 U.S.C. § 1692f, Defendant violated Cal. Civ. Code § 1788.17.

181.     The harm suffered by Ms. Stivers is particularized in that the violative debt collection conduct was directed at her personally and regarded her personal alleged debt.

182.     Creating a false sense of urgency "implicate[s] core Congressional concerns underlying the FDCPA." *Peter*, 310 F.3d at 352.

183.     Due to other financial obligations that take priority, Ms. Stivers was unable to make any payments on her debt.

184.     Because Ms. Stivers was worried about the legal consequences of continuing to ignore Defendant's communications which threatened a lawsuit if she did not respond, she ultimately contacted counsel for legal advice concerning the threats, including the timing of when Defendant would be filing suit.

185.    Furthermore, Defendant's debt collection conduct also created a material risk of harm to that concrete interest Congress was trying to protect in enacting the FDCPA.

186.    That is, a consumer who is faced with repeated threats of an imminent lawsuit for months on end is likely to suffer stress and anxiety.

187.    And here, Ms. Stivers suffered stress and anxiety over the repeated threats—often several times a week for months on end—that if she did not pay her debt, a lawsuit might soon be filed against her.

WHEREFORE, Plaintiffs respectfully request relief and judgment, as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Adjudging and declaring that Defendant violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692f and Cal. Civ. Code § 1788.17;

C.    Awarding Plaintiffs and members of the classes statutory damages;

D.    Awarding members of the classes actual damages, as incurred;

F.    Enjoining Defendant from future violations of 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692f and Cal. Civ. Code § 1788.17 with respect to Plaintiffs and the classes;

G.    Awarding Plaintiffs and members of the classes their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k, Cal. Civ. Code § 1788.30(c), and Rule 23 of the Federal Rules of Civil Procedure;

H.    Awarding Plaintiffs and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

I.    Awarding other and further relief as the Court may deem just and proper.

Plaintiffs are entitled to and hereby demand a trial by jury.

Dated: April 15, 2021

Respectfully submitted,

/s/ *Russell S. Thompson, IV*
Russell S. Thompson, IV (Cal. Bar No. 325944)
Thompson Consumer Law Group
7080 Hollywood Blvd., Suite 1100
Los Angeles, CA 90028
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com

James L. Davidson (FL Bar No. 723371)*
Greenwald Davidson Radbil PLLC
7601 N. Federal Hwy, Suite A-230
Boca Raton, FL 33487
Tel.: (561) 826-5477
jdavidson@gdrlawfirm.com

Attorneys for Plaintiffs and the proposed classes

* to seek admission *pro hac vice*